**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PHILIP FAVALE,** : | |
| : | |
| **Plaintiff** | **CIVIL ACTION NO. 3:12-2138** |
| : | |
| v. | |
| : | **(JUDGE MANNION)** |
| **CAROLYN COLVIN,**[1] | |
| **Acting Commissioner of the** : | |
| **Social Security Administration** | |
| : | |
| **Defendant** : | |

**M E M O R A N D U M**

The record in this action, (Doc. 7), has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act, ("Act"). 42 U.S.C. §§401-433, 1381-1383f.

**I. PROCEDURAL BACKGROUND**

Plaintiff Philip Favale protectively applied to the Social Security Administration for DIB under the Act on February 15, 2010. The Administration denied plaintiff's claim on May 25, 2010, finding that plaintiff

---

[1]On February 14, 2013, Carolyn Colvin became acting Commissioner of the Social Security Administration. Pursuant to Fed.R.Civ.P. 25(d), she has been substituted as the defendant.

was not disabled. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 9, 2011 in Wilkes-Barre, Pennsylvania. Plaintiff was represented by counsel. (Tr. 22). In addition to the plaintiff's testimony, the ALJ heard testimony from a vocational expert. ("VE"). (Tr. 31-35). On June 14, 2011, the ALJ found that plaintiff was not disabled within the meaning of the Act. (Tr. 12-18).

Plaintiff requested review of the ALJ's decision. (Tr. 8). On October 4, 2012, the Appeals Council denied the request for review. (Tr. 1-4). Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. §405(g). Plaintiff filed the instant appeal of the Commissioner's decision on October 25, 2012. (Doc. 1). The parties have filed briefs in support of their respective positions. (Docs. 8, 9).

## II. STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999), Johnson, 529 F.3d at 200. It is less than

a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

## III.    DISABILITY DETERMINATION PROCESS

A five-step process is required to determine if an applicant is disabled under the Act. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's

impairment prevents the applicant from doing any other work. 20 C.F.R. §§404.1520, 416.920.

Here, the ALJ determined that claimant has a severe impairment, but retains the residual functional capacity ("RFC") to perform a range of light work, and that therefore he is not disabled under the Act. (Tr. 14-18).

## IV.   THE ALJ'S DECISION

Using the above-outlined procedure, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2012, and that plaintiff had not engaged in substantial gainful activity since May 23, 2007, the alleged onset date. (Tr. 14). The ALJ found that plaintiff has the severe impairment degenerative disc disease of the lumbar spine, but that plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of the listed impairments of 20 C.F.R. Part 404, Subpart B, Appendix 1. (Tr. 16). The ALJ found that plaintiff's mental impairment of depressive disorder was non-severe. (Doc. 15). The ALJ found that the plaintiff had the RFC to perform a range of light work as defined by 20 C.F.R. §404.1567(b), lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing for 6 hours in an 8 hour day, walking up to one block with sit/stand flexibility every 20 to 30 minutes. The ALJ also determined that plaintiff is capable of performing his past relevant work as an administrative services clerk, and that this work does not require the performance of duties precluded

by his RFC. (Tr. 17-18). The ALJ finally determined that plaintiff was not under a disability as defined by the Act from May 23, 2007, through the date of the ALJ's decision. (Tr. 18).

## V.   EVIDENCE OF RECORD

The plaintiff has alleged disability from May 23, 2007. Plaintiff was born on March 11, 1958, and was forty-nine years of age at the time of the alleged disability onset. Plaintiff complained of back pain and leg pain as a result of injuring himself at work while lifting and pulling pallets and stacking shelves in May 2007. (Tr. 191, 246). He returned to work, but eventually re-injured himself in spring 2009. (Tr. 223).

Plaintiff saw Steven Reggie, D.C., for lower back and leg pain from April 2008 to June 2009. (Tr. 272-337). He missed some of these appointments, slowing his progress. (Tr. 307). Dr. Reggie's notes reflect that plaintiff's pain varied, and that plaintiff was treated with manipulation, trigger points therapy to the involved muscles, ultrasound therapy, and other treatments. In June 2008, Dr. Reggie noted "patient is progressing well with treatment and continued improved." (Tr. 311). His pain continued to vary from visit to visit, with Dr. Reggie noting later that month that progress was slow because of "frequently missed appointments and inability to follow recommended treatment plan." (Tr. 314). Plaintiff's activities of daily living were noted to be affected by his pain. (Tr. 319). Over the last few month of treatment with Dr. Reggie, his

lower back pain was reported to be increasing. (Tr. 325-330).

Plaintiff saw Dr. Leroy Pelicci, a pain management specialist, in June 2008, who stated that the chiropractic treatments plaintiff was receiving from Dr. Reggie were helpful, that plaintiff's pain was axial in nature, and that plaintiff should cease doing manual labor. (Tr. 246-48). A January 2008 spinal MRI report notes degenerative disc disease at L2-L3 and L4-L5, and mild central spinal stenosis[2] at those same discs. A July 2009 MRI showed disc herniation and degeneration at L2-L3 and L4-L5. Plaintiff saw Dr. Philip Hlavac in July 2009. His strength was good, and he had a positive straight leg raise on the right, negative on the left. Dr. Hlavac diagnosed plaintiff with high grade lumbar stenosis and lumbar radiculopathy[3] and recommended decompression surgery. (Tr. 223-25). Dr. Hlavac performed decompression surgery to alleviate the pain in plaintiff's legs on August 20, 2009. (Tr. 184). The procedure went well and he was discharged the next day. (Tr. 182-83). Plaintiff had a disc shaving procedure in 1999, and he had no pain until he injured himself in 2007. (Tr. 247).

---

[2]Narrowing of the lumbar spinal column that produces pressure on the nerve roots resulting in sciatica and a condition resembling intermittent claudication (leg muscle pain) and that usually occurs in middle or old age. http://www.merriam-webster.com/medical/spinal+stenosis

[3]Irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root. http://www.merriam-webster.com/dictionary/radiculopathy

Plaintiff also saw Dr. Steven Mazza from 2006 through June 2009. (Tr. 338-455). The records reflect varying levels of back pain. (Id.). Dr. Mazza believed in June 2009 that plaintiff was unable to work, and released him into the care of Dr. Pelicci for pain management. (Tr. 347).

Plaintiff received eighteen post-operative physical therapy visits from September 15, 2009 to December 2, 2009. (Tr. 209). His initial therapy report indicates that he had decreased range of motion, could walk for no more than fifteen minutes, and had elevated pain levels. Plaintiff's therapy goals were to walk for sixty continuous minutes without an increase in pain and to be able to sit for a thirty minute meal. The short term goals were for his lumbar range of motion to increase to 80%, to increase strength, and to decrease constant pain. Long term goals were to further decrease constant pain, increase range of motion to 85-100%, further increase strength, and increase plaintiff's awareness of his body mechanics. (Tr. 216).

After six visits, plaintiff was showing good tolerance for a light duty progressive exercise regimen, and his lumbar pain was varying. (Tr. 220). After eleven treatments, plaintiff was reporting continuous gains in the "constancy and severity" of his pain, but that there were still days when plaintiff needed to take pain medication to control his pain. He was noted to have 75% lumbar range of motion, and his walking endurance without pain was no more than thirty minutes. (Tr. 211). Plaintiff's therapy discharge summary noted that his constant pain was down to a level of 3 or 4 out of ten, and at times to 0-2 out

off ten, that he had increased his lumbar strength, and that his lumbar range of motion was 80%. He did not reach the goals of 85-100% range of motion, and getting his constant pain down to 0-2 out of ten. (Tr. 209).

Plaintiff followed up with Dr. Hlavac six weeks post-op. His leg pain had been relieved, but he had mild back pain. He was told to continue with his physical therapy. (Tr. 228). He followed-up again in November 2009. He was happy with the results of the decompression surgery, no longer had leg pain, and had occasional back pain and spasms. His wound had healed well, and he had excellent mobility and good strength. (Tr. 227). A January 2010 follow-up visit with Dr. Hlavac revealed that patient's pain in his right leg was gone, and his left leg pain was occasional. He complained of back pain that is worse in the morning and diminishes throughout the day. He was noted to have good mobility and strength. Dr. Hlavac recommended that plaintiff continue with home exercises, take pain medication as needed, and seek chiropractic intervention. He noted that plaintiff's pain was mostly "arthritic and mechanical axial in nature." (Tr. 226).

Plaintiff saw Dr. Pelicci approximately monthly for pain management following his decompression surgery.(Tr. 251-258, 588). On December 2, 2010, Dr. Pelicci stated that plaintiff "continues to do well, with our treatment," that he experiences relief, and that "a good percentage of his pain comes under control." (Tr. 588). Dr. Pelicci administered injections to plaintiff and noted each month that they give plaintiff "good relief" and "an extended period of relief and

8

pain control." (Tr. 251-58, 588). He noted each month that plaintiff was "more motivated, sleeping better, and overall improved." (Id.). It was also noted that treatments "improves the mood and increases functionality." (Id.). Dr. Pelicci noted that plaintiff has a "failed back syndrome." (Tr. 588). Plaintiff was taking Percocet, Soma, a muscle relaxer, and Zoloft throughout his time seeing Dr. Pelicci. (Tr. 251-58). In January 2011, plaintiff indicated to Dr. Pelicci that he had settled his worker's compensation case and that he would follow up with his family doctor. (Tr. 585-586). He did not receive further treatment from Dr. Pelicci.

Anthony Galidieri, PhD, performed a psychiatric review of plaintiff in May 2010 because plaintiff was alleging that he was depressed. (Tr. 259-71). He determined that plaintiff had mild limitations in maintaining concentration, persistence, or pace, and that he had no limitations in social functioning or activities of daily living on account of his mental impairment. Noting that plaintiff had no history of mental health treatment, and that his physicians noted improved mood, sleep, and motivation on account of his treatment for physical ailments, he determined that plaintiff's impairment was non-severe. (Tr. 271).

In a function report in April 2010, plaintiff noted that after he sits at a computer, watches television, or supervises his granddaughter for twenty minutes, pain requires him to walk around or lie down. (Tr. 142). He noted that he walks and feeds two dogs and one cat with the help of his wife and son. (Tr. 143). He noted sleeping for 4 ½ - 5 hours a night, and stated that his activities

9

are severely restricted by his pain. (Id.). He occasionally needs assistance with dressing, bathing, and using the toilet. He stopped cooking full meals and began to prepare smaller meals and sandwiches. (Tr. 144). He reported sweeping the floor, driving, and shopping on a limited basis. (Tr. 145). He no longer performed his hobbies of hunting, and woodwork, and went fishing for less time and less often. He reported being able to do less work in his garden. (Tr. 146). His social activities were limited due to his pain, as was his attention span. (Tr. 147). He uses a cane as his pain requires. (Tr. 148). He noted feeling depressed. (Id.).

Plaintiff's work history report shows that he was an administrative services clerk from 1985-2002, a district manager for a newspaper from 2002-2003, a construction site foreman from 2003-2005, and a Coca-Cola merchandiser and delivery man from 2005-2009. (Tr. 153). Plaintiff's workers' compensation case against Coca-Cola was settled on December 9, 2010. (Tr. 104).

Plaintiff's testimony at the hearing reflected that his surgeries helped with pain in his legs, but that he continues to have pain in his lower back. (Tr. 27). He said that he can carry a maximum of twenty pounds, that he can walk short distances, and that he can sit for twenty minutes to half an hour without changing position. (Tr. 27-28). He walks his dogs each morning, and then watches TV or supervises his granddaughter. He can drive short distances. (Tr. 28). He can mow the lawn in stages, twenty minutes at a time. (Tr. 28-29). He

testified that he is no longer able to hunt or fish, but that he can occasionally do a little bit of work on his model train hobby. (Tr. 29). He testified that he needs to alternate positions from sitting to standing or lying down frequently. (Tr. 29). He has difficulty taking stairs. (Tr. 30). He purchased a golf cart to get around his property, which is thirteen acres. (Tr. 30-31).

The VE testimony reflected that plaintiff was approaching advanced age, had a high school education with some college, and was part of the Northeastern Pennsylvania labor market. (Tr. 32). The ALJ asked the VE that if there were a hypothetical claimant with the same age, education, and employment history, and medical history of plaintiff, who could occasionally carry 20 pounds, more frequently carry ten pounds, who received normal breaks, lunch hours, and who needed the ability to have flexibility in sitting and standing every twenty to thirty minutes, and who could sit or stand for six of every eight hours, would such a person be able to do any past relevant work? (Tr. 32-33). The VE testified that with that RFC, someone could work as an administrative services clerk, which is sedentary and semiskilled, and an occupation of which there are significant numbers in the northeastern Pennsylvania economy. (Tr. 33-34). The ALJ then asked the VE that if plaintiff's account of his symptomology was credited, whether he would he able to work. (Tr. 34). The VE testified that if he needed to lie down during the day for any time longer than a normal break period, that would preclude him being a member of the workforce, but that otherwise, the administrative services clerk

11

position remained appropriate. (Tr. 34-35). The VE stated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), and that the sit/stand option, which is not addressed by the DOT, came from her 23 years of experience as a vocational case manager. (Tr. 35).

## VI. DISCUSSION

Plaintiff alleges that the ALJ failed to properly analyze whether plaintiff's impairment met an impairment of 20 C.F.R. 404, Subpart P, Appendix 1. Plaintiff next alleges that the substantial evidence did not support the ALJ's conclusion that plaintiff is able to engage in substantial gainful activity.

Plaintiff contends that for at least a part of the disability period in question, plaintiff's impairment met listing 1.04(A) - disorders of the spine. Listing 1.04(A) states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>     A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Plaintiff claims that he meets this definition, and that the ALJ failed to sufficiently explain why he thought plaintiff did not meet the listing. He points to his MRI showing degeneration in his spine, his diagnosis of severe stenosis,

12

the fact that he had surgery, and Dr. Pelicci's note that plaintiff had "failed back syndrome." While the evidence certainly supports that plaintiff experienced pain, and that he had stenosis and degenerative disc disease, there is insufficient evidence in the record to show that plaintiff had evidence of nerve root compression, limitation of motion of the spine, motor loss consisting of atrophy accompanied by sensory or reflex loss, and positive straight leg raising tests.

Plaintiff's MRIs show degeneration affecting nerve roots. However, nothing in the record supports that plaintiff had muscle atrophy, motor loss, or sensory or reflex loss. His therapy notes reflect that his overall strength and range of motion were generally good. There is no indication that plaintiff suffered sensory or reflex loss. While Dr. Pelicci noted failed back syndrome,(Tr. 588), the medical record of evidence does not show how that diagnosis was arrived at, how it is different from the diagnosis of degeneration and stenosis, and how it should be read in conjunction with his belief that "a good percentage" of plaintiff's pain was under control and that he experienced relief of stiffness and inflexibility. (Tr. 588). Moreover, plaintiff had a positive leg raise test only once, although the therapy and treatment records reflect that he did that test many times.

Plaintiff did not meet his burden of showing that his stenosis and degeneration resulted in impairments equaling the severity of listing 1.04(A). The ALJ noted that he specifically reviewed the listings of 1.00 et seq., but

found that although "claimant's condition is severe, it does not satisfy the requisite neurological, laboratory, clinical or diagnostic requirements for listing-level severity." (Tr. 16). Put another way, the medical evidence of record simply does not reflect with specificity the requirements that listing 1.04(A) demands. The evidence of record substantially supports the ALJ's finding that plaintiff's impairments are not severe enough to meet the listings requirements.

Plaintiff next argues that the medical evidence of record demonstrates that plaintiff is unable to engage in substantial gainful activity. Plaintiff specifically notes that plaintiff has a substantial and consistent work history which does not reflect the behavior of a malingerer. Plaintiff further states that the ALJ ignored Dr. Pelicci's statement that plaintiff had "failed back syndrome" and that he ignored plaintiff's subjective complaints of pain.

The ALJ's decision does not reflect that he ignored plaintiff's complaints of pain. In fact, the ALJ specifically found that it is clear that plaintiff had "some pain and limitations relative to degenerative disc disease." (Tr. 17). Instead, he credited plaintiff's accounts of pain, as well as plaintiff's own testimony that he can walk short distances without trouble, that he can stand or sit for twenty to thirty minutes, and that he can carry light weights occasionally in reaching his determination of plaintiff's RFC and ability to do the work of an administrative services clerk, all of which is consistent with the medical evidence of record. (Id.). The ALJ took all of these limitations into consideration when determining plaintiff's RFC, and, crediting plaintiff's testimony, specifically limited plaintiff to

14

work featuring flexibility in the ability to sit and stand.

As to "failed back syndrome," it is true that the ALJ did not specifically address this statement by Dr. Pelicci. However, the statement about the syndrome occurred as a fleeting note in a series of treatment notes which, while they do reflect pain, do not reflect that plaintiff's symptoms were so severe that he could not do any work. In fact, Dr. Pelicci's notes repeatedly indicate that plaintiff got relief from his treatments, and that his mood and functionality were improved. (Tr. 251-258, 588). The statement about failed back syndrome is not explained or supported, and is not in accordance with the rest of Dr. Pelicci's notes or the rest of the medical evidence of record, which generally reflects that plaintiff was in pain, but that treatment gave him relief and that his condition was improving after his operation. The evidence of record substantially supports the ALJ's determination that plaintiff was able to do light work.

## VII.  CONCLUSION

Based on the foregoing, plaintiff's appeal of the decision of the Commissioner, (Doc. 1), is **DENIED**, and the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to close the case. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: April 29, 2014**